IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS |
|---|---|
| Plaintiff, | |
| v | |
| FAUSTO ALEJANDRO GALAVIZ-GAXIOLA, | Case No. 2:16-cr-00103-DB |
| Defendant. | District Judge Dee Benson |

Before the Court is Defendant Galaviz-Gaxiola's ("Galaviz-Gaxiola") Motion to Suppress. (Dkt. No. 41.) On June 13, 2016, the Court conducted an evidentiary hearing on Galaviz-Gaxiola's Motion. Galaviz-Gaxiola was present and represented by Joseph H. Jardine. Michael S. Gadd represented the United States. At the conclusion of oral argument, the Court ordered a transcript and set a briefing schedule.[1] After review of the memoranda submitted by the parties and the testimony and evidence presented at the evidentiary hearing, the Court renders the following Memorandum Decision and Order.

**FACTUAL BACKGROUND**

Galaviz-Gaxiola's Motion to Suppress involves the search of a residence located at 3119 S. 3860 W., West Valley, Utah. The search warrant affidavit was executed by Special Agent Mark Bacon of the Drug Enforcement Administration and included the following information.

In October of 2015, the Drug Enforcement Administration and the Davis Metro Narcotics Strike Force began a joint investigation targeting the suspected drug activity of Galaviz-Gaxiola, Fernando Galaviz-Castro ("Galaviz-Castro"), Jesus Pina-Cantua ("Pina-Cantua"), and Efrain

---

[1] The period for additional briefing ended on June 27, 2016 and neither party requested oral argument.

Espinoza ("Espinoza") (collectively, "Defendants"). (Gov. Ex. 1,[2] at 4.) Task force officers received information from a confidential source ("CS") that Galaviz-Gaxiola and Galaviz-Castro[3] were engaged in drug trafficking. (*Id.*) The CS informed officers that Galaviz-Gaxiola was supplying Espinoza with drugs. (*Id.*) Additionally, the CS reported that Galaviz-Gaxiola and Espinoza asked the CS to introduce them to drug distributors in Salt Lake City, Utah. (*Id.*)

In October of 2015, the CS introduced undercover taskforce officers to Galaviz-Gaxiola, Galaviz-Castro, and Espinoza. (*Id.*) From October 2015 to February 2016, undercover officers purchased drugs from Galaviz-Gaxiola, Galaviz-Castro, and Espinoza. (*Id.* at 5–6.) The undercover drug purchases included methamphetamine and heroin. (*Id.*)

During the investigation, officers conducted video surveillance of addresses where officers suspected the Defendants were living and engaging in drug trafficking. (*Id.* at 3.) Officers observed Galaviz-Gaxiola and Galaviz-Castro coming and going from the residence located at 3119 S. 3860 W. "in a pattern consistent with residency." (*Id.* at 7.) Additionally, officers observed Galaviz-Gaxiola and Galaviz-Castro driving a gold 2011 Volkswagen Jetta with Utah license plate "E867AX." (*Id.* at 8.) Officers observed the gold Jetta "routinely coming and going" from 3119 S. 3860 W. (*Id.*)

The search warrant affidavit's statement of probable cause outlines three undercover drug purchases involving the Jetta and 3119 S. 3860 W.

---

[2] Government Exhibit 1 is the February 12, 2016 Search Warrant Affidavit of Special Agent Mark Bacon of the Drug Enforcement Administration.

[3] The search warrant affidavit refers to "Fernan LNU ("Last Name Unknown")." (Gov. Ex. 1, at 3.) The United States' Memorandum in Opposition to Galaviz-Gaxiola's Motion for Disclosure of Identity of Confidential Sources indicates that Fernan LNU was later identified as Defendant Fernando Galaviz-Castro. (Dkt. No. 43, p. 1–2.)

On October 8, 2015, an undercover officer and the CS purchased methamphetamine from Galaviz-Gaxiola and Galaviz-Castro in the parking lot of a West Valley City Costco. (*Id.* at 8.) After the transaction, officers followed the Jetta to a Family Dollar store in West Valley City. (*Id.*) After a brief stop at the Family Dollar store, the Jetta proceeded to 3119 S. 3860 W. (*Id.*)

On October 20, 2015,[4] an undercover officer purchased methamphetamine from Galaviz-Gaxiola in the same West Valley City Costco parking lot. (*Id.* at 9.) After the transaction, officers followed the Jetta, driven by Galaviz-Gaxiola, to 3119 S. 3860 W. (*Id.*)

On February 9, 2016, an undercover officer purchased methamphetamine from Galaviz-Castro in the same West Valley City Costco parking lot. (*Id.*) Prior to the controlled buy, officers followed the Jetta, driven by Galaviz-Castro, directly from 3119 S. 3860 W. to the Costco parking lot. (*Id.*)

Special Agent Bacon stated that based on "observations made during the . . . undercover purchases," Special Agent Bacon believed Galaviz-Gaxiola and Galaviz-Castro were routinely keeping drugs and drug proceeds at 3119 S. 3860 W. (*Id.* at 10.) Special Agent Bacon stated, based on his training and experience, that drug traffickers often keep evidence of drug trafficking "within their residences, business, vehicles and/or other locations over which they maintain dominion and control." (*See id.* at 11–14.)

The search warrant affidavit described the property to be searched as:

1) RESIDENCE LOCATED AT 3119 S 3860 W, WEST VALLEY CITY, UTAH. FURTHER DESCRIBED AS A RED BRICK HOUSE, SECOND STRUCTURE SOUTH OF 3100 SOUTH ON THE EAST SIDE OF THE CUL DE SAC WITH A WHITE FRONT DOOR FACING WEST AND A

---

[4] The search warrant affidavit states that the purchases in October occurred on "October 08, 2016" and "October 20, 2016." (Gov. Ex. 1, at 8.) The Court recognizes Special Agent Bacon's clerical error and finds that the clerical error was immaterial to the Magistrate Judge's finding of probable cause. *See United States v. Nelson*, No. 07-CR-0045-CVE, 2008 WL 3896123, at *2 (N.D. Okla. Aug. 19, 2008) ("Clerical error not affecting the ultimate finding of probable cause is not fatal to the validity of the warrant." (citing *United States v. Hampton*, 633 F.2d 927, 929 (10th Cir. 1981)).

3

DETACHED GARAGE WITH A WHITE ROLL UP DOOR. PARCEL NUMBER 15-29-303-014-0000.

2) GOLD/SILVER IN COLOR 2011 VOLKSWAGEN JETT DISPLAYING UTAH PLATE E867AX. THE JETTA IS REGISTERED TO GERON ALDAIR AT 3603 3340 W, WEST VALLEY CITY, UTAH.

(*Id.* at Att. A.) The affidavit's description of the items to be seized included: pay-owe sheets, titles and paperwork related to assets, large amounts of United States currency, bank records and records related to the wire transfer of money, residency documents, gas receipts, plane tickets, maps, hotel receipts, drug packing materials, firearms and ammunition, cellular telephones, methamphetamine, and heroin. (*Id.* at Att. B.)

On February 18, 2016, officers executed the warrant and searched 3119 S. 3860 W. During the search, officers seized heroin, methamphetamine, and a large amount of U.S. currency. (Gov. Ex. 2.[5]) Additionally, officers seized pay-owe sheets, Sigue wire transfer records, a Royal Sovereign money counter, several cellular telephones, a computer tablet, and several Mexico identification cards. (*Id.*)

On March 2, 2016, a grand jury indicted Galaviz-Gaxiola on five counts: Conspiracy to Distribute Methamphetamine, Conspiracy to Distribute Heroin, Possession of Methamphetamine with Intent to Distribute, Possession of Heroin with Intent to Distribute, and Distribution of Methamphetamine. (Dkt. No. 26.) Galaviz-Castro, Pina-Cantua, and Espinoza were indicted on similar drug trafficking charges.

## STANDARDS OF REVIEW

"The defendant bears the burden of proving that the challenged search was illegal under the Fourth Amendment, but the ultimate determination of reasonableness under the Fourth

---

[5] Government Exhibit 2 is a list of "Items Seized from 3119 S. 3860 W., West Valley City, Utah, on February 18, 2016." Government Exhibit 2 describes the location in the residence where each item was found and seized.

4

Amendment is a question of law." *United States v. Castellon*, 189 F.3d 479 (10th Cir. 1999) (unpublished). Further, the defendant bears the burden of demonstrating a "'factual nexus between the illegality and the challenged evidence.'" *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) (citations omitted). Additionally, the Court is mindful that the "credibility of witnesses, the weight accorded to evidence, and the reasonable inferences drawn therefrom fall within the province of the district court." *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (citations omitted).

## DISCUSSION

The Fourth Amendment to the United States Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment's "prohibition on unreasonable searches and seizures is enforced through the exclusionary rule, which excludes evidence seized in violation of the Fourth Amendment." *United States v. Guzman-Cruz*, 2:14-cr-61, 2015 WL 150286, at *8 (D. Utah Jan. 12, 2015).

Galaviz-Gaxiola's Motion relies on the exclusionary rule. Specifically, Galaviz-Gaxiola provides the Court two grounds for suppressing the evidence seized from 3119 S. 3860 W.[6] First, Galaviz-Gaxiola argues that the evidence found at 3119 S. 3860 W. should be suppressed because the search warrant failed to tie Galaviz-Gaxiola's suspected drug trafficking activity to 3119 S. 3860 W. (Dkt. No. 45, p. 7.) Second, Galaviz-Gaxiola argues that Special Agent Bacon converted the warrant into a forbidden general warrant by proffering that drug traffickers

---

[6] Galaviz-Gaxiola concedes that officers had probable cause to search the gold Jetta. (Dkt. No. 45, p. 4, n.2.)

5

typically keep evidence of drug trafficking "within their residences, business, vehicles and/or other locations over which they maintain dominion and control." (*Id.* at 9–10.) For the reasons that follow, the Court finds that Galaviz-Gaxiola has not demonstrated his Fourth Amendment rights were violated.

**I. The Nexus Requirement**

The search warrant affidavit properly tied Galaviz-Gaxiola's drug trafficking activity to 3119 S. 3860 W. and, therefore, officers had ample probable cause to search 3119 S. 3860 W. for evidence of drug trafficking. "'An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Barajas*, 710 F.3d 1102, 1108 (10th Cir. 2013) (citations omitted). Importantly, "[p]robable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998). Additionally, the Court is mindful that "[s]earches conducted pursuant to a warrant are favored, . . . and, as such, the magistrate's determination that probable cause exists is entitled to great deference." *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005) (citations omitted).

In *United States v. Sanchez*, officers used a confidential informant to purchase marijuana from the defendant and his alleged coconspirator. 555 F.3d 910, 913 (10th Cir. 2009). Following the purchase, officers followed the defendant to a residence identified as 713 S. Norwood Avenue. *Id.* Subsequently, officers obtained and executed a warrant to search 713 S. Norwood Avenue. *Id.* The defendant argued that the search warrant lacked probable cause because none of the alleged illegal drug activity occurred at 713 S. Norwood Avenue. *Id.* The

Tenth Circuit disagreed, finding that it is "merely common sense that a drug supplier will keep evidence of his crimes at his home." *Id.* at 914.

Similarly, in *United States v. Castillo-Marquez*, officers enlisted the help of a confidential informant to purchase cocaine from the defendant. 171 F. App'x 737, 738 (10th Cir. 2006) (unpublished).[7] During the investigation, the defendant told the confidential informant to meet him at a predetermined destination. *Id.* Once the confidential informant arrived and paid the defendant, the defendant told the confidential informant that he would return with drugs. *Id.* The defendant then drove to a residence identified as 7835 E. Marshall. *Id.* The defendant entered the residence "with a key and stayed inside for approximately two to three minutes." *Id.* After the defendant left the residence, he returned to the original buy location and delivered cocaine to the confidential informant. *Id.* The defendant claimed that the search was unconstitutional because officers failed to tie any illegal drug activity to the residence located at 7835 E. Marshall. *Id.* at 739. The Tenth Circuit noted that the Fourth Amendment's nexus requirement does not require that:

> law enforcement . . . obtain direct evidence or personal knowledge that the contraband sought is actually located in the place to be searched . . . Rather, an affidavit establishes this nexus when it describes circumstances that 'would warrant a man of reasonable caution to believe that the articles sought were located at [the defendant]'s residence'

*Id.* at 739 (citing *United States v. Rahn*, 511 F.2d 290, 293 (10th Cir.1975)). The court held that the nexus requirement was satisfied because officers were able to connect a drug purchase to the defendant's residence through surveillance. *Id.*

Just like *Sanchez* and *Castillo-Marquez*, the Court finds that any reasonable person would believe Galaviz-Gaxiola was engaged in drug trafficking at 3119 S. 3860 W. Galaviz-Gaxiola

---

[7] *See* U.S. Ct. App. 10th Cir. Rule 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value").

7

and Galaviz-Castro were observed by officers coming and going from 3119 S. 3860 W. "in a pattern consistent with residency." (Gov. Ex. 1, at 7.) Officers observed Galaviz-Gaxiola and Galaviz-Castro using a gold 2011 Volkswagen Jetta to facilitate drug purchases with undercover officers. (*Id.* at 8.) Additionally, officers routinely observed the Jetta coming and going from 3119 S. 3860 W. (*Id.*) Moreover, officers were able to link undercover drug purchases to 3119 S. 3860 W. and the Jetta. On three occasions, officers either (1) followed the Jetta from 3119 S. 3860 W. to the buy location or (2) followed the Jetta from the buy location directly back to 3119 S. 3860 W. (*Id.* at 8–9.) Under these circumstances, it was merely common sense for officers and the Magistrate Judge to conclude that evidence of Galaviz-Gaxiola's suspected drug trafficking would be found at 3119 S. 3860 W. Accordingly, Galaviz-Gaxiola has failed to demonstrate that the search warrant and supporting affidavit failed to establish probable cause to search 3119 S. 3960 W.

**II. Description of the Place to be Searched**

The warrant's description of the place to be searched, 3119 S. 3860 W., plainly satisfies the particularity demands of the Fourth Amendment. The Fourth Amendment requires the affiant to particularly describe the "place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The "manifest purpose" of the particularity requirement is to "ensure[] that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (noting that the purpose of the particularity requirement is to address the "specific evil" of the "'general warrant' abhorred by the colonists" (citations omitted)). Indeed, "a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is

8

unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n. 5 (1984). "'The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" *Harman v. Pollock*, 446 F.3d 1069, 1078 (10th Cir. 2006) (citations omitted).

Under this standard, the Court finds that the search warrant satisfied the particularity demands of the Fourth Amendment. Special Agent Bacon described 3119 S. 3860 W. with precision. The search warrant affidavit described the place to be searched as:

> 1) RESIDENCE LOCATED AT 3119 S 3860 W, WEST VALLEY CITY, UTAH. FURTHER DESCRIBED AS A RED BRICK HOUSE, SECOND STRUCTURE SOUTH OF 3100 SOUTH ON THE EAST SIDE OF THE CUL DE SAC WITH A WHITE FRONT DOOR FACING WEST AND A DETACHED GARAGE WITH A WHITE ROLL UP DOOR. PARCEL NUMBER 15-29-303-014-0000.

(Gov. Ex. 1, Att. A.) A residence's street address, coupled with a physical description of the building, is sufficiently particular for the purposes of the Fourth Amendment. *See United States v. Myers*, 553 F. Supp. 98, 103 (D. Kan. 1982) ("The name of a business, street address and city is a sufficient description for the purposes of a search warrant."). Moreover, the Court disagrees with Galaviz-Gaxiola that Special Agent Bacon's generalizations converted the search warrant into a forbidden general warrant. In the search warrant affidavit, Special Agent Bacon stated, based on his training and experience, that he believed items involved in drug trafficking are typically located where a suspect "maintain[s] dominion and control." (Gov. Ex. 1, at 11–14.) By delineating his assessment of probable cause, Special Agent Bacon was not asking for authorization to search everywhere Galaviz-Gaxiola exercised dominion and control. Rather, Special Agent Bacon asked for permission to search a residence where officers suspected

9

Galaviz-Gaxiola was residing and where officers had probable cause to believe Galaviz-Gaxiola was engaged in drug trafficking. Therefore, Galaviz-Gaxiola has not demonstrated that the search warrant was deficient and that his Fourth Amendment rights were violated.

## CONCLUSION

For the reasons stated above, Galaviz-Gaxiola's Motion to Suppress is DENIED.

Dated: June 30, 2016.

BY THE COURT:

Dee Benson
United States District Judge